```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
LINDITA IBROCI, and
NEIL IBROCI,

                Plaintiffs,
                                              MEMORANDUM AND ORDER

        - against -                           17 Civ. 1449 (NRB)


IVAN SERGIO IDROVO, and
JC TRANSPORT INC.,

                Defendants.
-----------------------------------------X
```
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

The Court is in receipt of the parties' letters dated November 13, 2019; November 15, 2019; November 19, 2019; December 5, 2019; December 11, 2019; and December 19, 2019, and the exhibits attached thereto. The Court also held a teleconference on November 25, 2019 and an in-person conference on March 5, 2020 to discuss this discovery dispute with the parties.

Plaintiffs resist disclosure of the entire data from which plaintiffs' expert extracted certain data upon which he bases his opinion. The underlying reason for this resistance is that the expert received the data under the condition that he hold it in confidence and use it only for his academic endeavors. However, plaintiffs' expert, Dr. Davatzikos, used the data to prepare an expert report in a private litigation. The issue posed here is

whether plaintiffs and their expert may rely on the derivations from the data without disclosing the entire data set. The answer is no for two independently dispositive reasons.

First, plaintiffs' counsel did not dispute the Court's observation that, if the data had not been received under a confidentiality agreement, it would have been disclosed in the normal discovery process. See Tr. for March 5, 2020 Conference at 25. Plaintiffs may not change the discovery rules by selecting an expert who has entered into confidentiality agreements.

Second, defendants have demonstrated a need for the entire data set in order to adequately challenge plaintiffs' expert opinion. The gist of Dr. Davatzikos' opinion is a comparison of where plaintiff Ms. Ibroci stands in relation to other women in her age group in terms of the volume of certain brain regions selected by Dr. Davatzikos. See Davatzikos Amended Report (ECF No. 56-6) at 2. In determining whether a specific brain region of Ms. Ibroci's brain qualifies as an "abnormal" region, Dr. Davatzikos relied on the z-scores (i.e. the difference between the control group's mean and Ms. Ibroci's brain region volume for a particular brain region, divided by the control group's standard deviation for the volume of that brain region). Accordingly, at the foundation of Dr. Davatzikos' opinion is the accuracy of the mean and standard deviation of the control group members' brain

2

region volumes. Requiring defendants to simply assume the accuracy of Dr. Davatzikos' calculations of the control group's mean and standard deviation would deny defendants a meaningful opportunity to cross-examine Dr. Davatzikos as contemplated under the Federal Rule of Evidence 705. See Lee Valley Tools, Ltd. v. Indus. Blade Co., 288 F.R.D. 254, 267 (W.D.N.Y. 2013) ("[E]ffective cross-examination is dependent upon access to the underlying data and assumptions upon which the expert relied.") (citing R.F.M.A.S., Inc. v. So, 748 F. Supp. 2d 244, 269 (S.D.N.Y. 2010)).

Further, Dr. Davatzikos also cites Ms. Ibroci's percentile rank in terms of the volume of certain brain region as evidence of abnormality. Davatzikos Amended Report (ECF No. 56-6) at 1. Despite Dr. Davatzikos appears to derive this percentile rank from the z-score, nowhere in his report does he provide the basis for translating the z-score into a percentile rank or deriving it otherwise. At the March 5, 2020 conference, plaintiffs argued that their disclosure of the control group mean and standard deviation as to each brain region would allow defendants to recreate the distribution of the control group members' brain region area for each region, which would presumably allow defendants to verify Ms. Ibroci's percentile rank. The Court rejects this argument. Because different distributions can have the same mean and standard deviation, see F. J. Anscombe, Graphs

3

in Statistical Analysis, 27 Am. Statistician 17, 19-20 (1973), a disclosure of mean and standard decisions is insufficient to replace a disclosure of the actual distribution. Without brain region volume data as to individual members of the control group being disclosed, defendants would be deprived of a meaningful opportunity to challenge Dr. Davatzikos' opinion on the abnormality of plaintiff's brain.[1]

For the foregoing reasons, plaintiffs shall either withdraw Dr. Davatzikos' opinion or disclose the numerical data for all brain regions for the 710 members in the control group selected by Dr. Davatzikos without personally identifying information. Plaintiffs shall inform defendants and the Court of their decision within two (2) weeks of the entry of this Memorandum and Order.

**SO ORDERED.**

Dated:   New York, New York
         April 9, 2020

_____
NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

---

[1] Plaintiffs' argument based on the Health Insurance Portability and Accountability Act of 1996 ("HIPPA") is mooted by the fact that defendants are not seeking any personally identifiable information, including the MRI brain scan images of the control group members.